John M. Howell; ISB #6234
Cody J. Witko; ISB #10427
POWERS FARLEY, PC
702 West Idaho Street, Suite 700
Boise, Idaho  83702
Telephone:  (208) 577-5100
Email: contact@powersfarley.com
      jmh@powersfarley.com
      cjw@powersfarley.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IVAN DELCHEV IVANOV,<br><br>        Plaintiff,<br><br>vs.<br><br>FITNESS ELITE TRAINING CENTER, INC., an Idaho corporation; DAN MAUGER, and BROOKE MAUGER,<br><br>        Defendants. | Case No. 1:20-cv-00380<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff IVAN DELCHEV IVANOV ("Ivan"), by and through his attorneys of record, Powers Farley, PC, and hereby for his complaint against the Defendants, FITNESS ELITE TRAINING CENTER, INC., DAN MAUGER and BROOKE MAUGER (collectively "Defendants"), and alleges and avers as follows:

### I.  PARTIES

1.     Plaintiff is a resident of Pottawattamie County, Iowa.

2.     Fitness Elite Training Center, Inc., ("Fitness Elite") is a corporation organized and existing by virtue of the laws of the State of Idaho, with its principal place of business in Wendell,

Idaho. Dan Mauger is the incorporator, President, and registered agent of Fitness Elite. Upon information and belief, Fitness Elite is owned and operated by Dan and Brooke Mauger.

3. Defendants Dan Mauger and Brooker Mauger (collectively "the Maugers") are a married couple residing in Gooding County, Idaho.

## II. JURISDICTION AND VENUE

4. Jurisdiction is proper in this district because the amount in controversy at issue in this action is greater than the sum of $75,000, excluding interest and costs, and is between citizens of different states making jurisdiction proper pursuant to 28 U.S.C. § 1332.

5. Venue is proper in the United States District Court for the District of Idaho pursuant to 18 U.S.C. §§ 1391(b) because all of the Defendants reside in the District of Idaho and because the events giving rise to this claim occurred in the District of Idaho.

## III. FACTUAL ALLEGATIONS

6. Ivan and his wife, Mariya Ivanov, came to the United States of America in October of 2010 from Bulgaria where Ivan was a champion wrestler and coach. Ivan quickly took a position as a head wrestling coach at a wrestling club in Boise, Idaho. While coaching at the club in Boise, Ivan achieved great results, leading multiple athletes to become National Champions, World Team Members, and one World Championship medalist for Team USA.

7. By approximately 2013 or 2014, Defendant Dan Mauger had become aware of Ivan's success. Mr. Mauger then began traveling over three hours roundtrip from Wendell, Idaho, to Boise so that his son, K.M., could train three days a week where Ivan coached. After about a year of commuting, Mr. Mauger agreed to pay the Boise club to have coaches train athletes in Wendell three days a week; Mr. Mauger provided the building. To Mr. Mauger's dismay, Ivan, still an employee of the Boise club, was not present at all the practices conducted in Wendell.

8. Apparently unsatisfied with this arrangement with the Boise club, Mr. Mauger offered Ivan a full-time head coaching position in Wendell at a new wrestling club. Such a club was to be created by Mr. Mauger, largely for the purpose of having Ivan coach K.M. However, as the arrangement between Mr. Mauger and the Boise club was on-going, and Ivan was still an employee of the latter, Ivan felt compelled to decline the offer.

9. Eventually, Mr. Mauger persuaded Ivan to leave the Boise club. After an initial offer of $150,000 per year fell through and some subsequent negotiations, Mr. Mauger and Ivan executed a written employment contract (the "Contract") on November 9, 2015, establishing Ivan as the new head wrestling coach for Defendant Fitness Elite.

10. The terms of the Contract stated Fitness Elite (named the "School" in the Contract) would employ Ivan (named the "Coach" in the Contract) as the head wrestling coach for $120,000 a year for a ten-year term, ending October 31, 2025.

11. The Contract directed Ivan to "report directly to and act and perform to the reasonable satisfaction of the School, who [sic] will determine Coach's duties and responsibilities." Ivan's duties under the Contract included, among many others, "development activities and the overall effective performance of the program's student-athletes and coaching staff."

12. The Contract also required Fitness Elite to provide housing for Ivan and his wife as a "Fringe Benefit." Ivan and Mariya thus moved from Boise to Wendell so Ivan could begin coaching at Fitness Elite's facility, which was located at 3050 Rex Leland Highway (3050 S 1950 E), Wendell, ID 83355. For their first two months in Wendell, Ivan and Mariya lived in the house that was also located at 3050 Rex Leland Highway, adjacent to the gym facility.

13. The house and facility at this location were and are owned by the Maugers, not Fitness Elite.

14. Ivan and Mariya then moved into 3325 S 1975 E, Wendell, ID 83355, the house neighboring the Maugers' residence. This house was and is owned by the Maugers, not Fitness Elite.

15. As an additional fringe benefit, Fitness Elite was also required to pay half of Ivan's disability and term life insurance. These payments were made in cash by Mr. Mauger, not by Fitness Elite.

16. Once in Wendell, Ivan began a new wrestling club, Delchev Trained Academy (DTA), which was chartered through USA Wrestling and operated within Fitness Elite's facility. Over the next four and half years, Ivan's coaching brought great success to DTA and Fitness Elite, producing a World Team member (the Maugers' son, K.M., who was also a three-time state champion, National Champion, multiple-time All-American, and a Division I NCAA commit to Utah Valley University), 11 National Champions, 59 All-Americans, Idaho's first ever two-time Triple Crown National Champion, multiple state champions and placers, multiple college recruits, and numerous team titles.

17. In approximately 2019, the Maugers visited Utah Valley University ("UVU") on a recruiting trip so that they and K.M. could assess UVU and its wrestling program. Shortly thereafter, Mr. Mauger informed Ivan that K.M. would be joining the UVU wrestling team, where a coaching position was also available for Ivan. Mr. Mauger expressed to Ivan that Ivan would need to move to Utah and take this new coaching position in order continue coaching K.M.

18. Ivan expressed concern in response to Mr. Mauger's mandate that Ivan move to Utah and take a new coaching position, as Ivan understood he owed certain duties under the

contract to his athletes, staff, and Fitness Elite, all located in Wendell, Idaho. Likewise, Ivan was justifiably concerned about the Contract's provision governing Ivan's "other employment." Ivan thus expressed that moving to Utah for a new job with UVU would likely necessitate a modification or amendment to the Contract, which had to be done in writing; thus, at a minimum, a discussion about the details of any new agreement needed to occur.

19. By late 2019, K.M. had accepted a position on the UVU wrestling team as part of the 2020 signing class.

20. Eventually, Ivan became aware that Mr. Mauger had already all but promised Ivan's presence at UVU to the coach there. Ivan continued to ask for a discussion about Mr. Mauger's attempt to unilaterally modify the terms of the Contract. By April 24, 2020, Mr. Mauger finally agreed to see Ivan. At that time, Ivan gave Mr. Mauger a letter dated April 22, 2020, which communicated his concern about the "lack of clarity on what these [new] terms are and how we are going to proceed" in regard to the move to Utah and Ivan's status as coach for both K.M. personally and head coach for Fitness Elite and the other athletes.

21. Ivan's letter presented "newly proposed" terms prompted by Mr. Mauger's unreasonable relocation requirement. Those newly proposed terms included a cost-of-living-adjustment for inflation and a lump sum payment. The newly proposed terms also included the same base pay, that Ivan be provided with housing in Utah, and payment of half of Ivan's disability and life insurance, terms already established in the Contract.

22. Mr. Mauger, disregarded Ivan's letter and attempt to clarify Mr. Mauger's material alteration of the Contract, and, on April 25, 2020, texted Ivan asking if Ivan had decided to take the coaching position at UVU, irrespective of the conflicts this requirement created with the Contract.

23. Ivan replied via text message as follows:

> Dan, in order for me to move to Utah and for you to move the club to Utah, we must both mutually agree on a new contract. The current contract we have doesn't allow me to move to Utah and it doesn't allow you to move the club to Utah... otherwise you would be breaching the contract we currently have in place. I would be happy to move to Utah and support K[.M.], but we must agree on new terms. Please review the letter I wrote for you. As soon as you agree on the new terms, we can write a new contract and move to Utah. Otherwise, I must fulfill my coaching duties and responsibilities for Fitness Elite Training Center in Idaho.

24. As his message illustrates, Ivan did not suggest or desire any alteration of the Contract if he were able to continue his duties in Idaho, and he was continuingly willing to perform those duties.

25. That same day, Mr. Mauger replied by threatening to fire Ivan, writing that Ivan's "job is in Utah[;] if you don't take it you are in breach of you[r] contract and you will be unemployed[.]" Mr. Mauger sent a second message stating, "You better think about what you are doing and what you are putting at risk!"

26. Mr. Mauger further stated he could send Ivan to coach anywhere he desired, including but not limited to "Tunisia" (one of the places Ivan had had coaching success prior to coming to the United States).

27. These texts and comment illuminated Mr. Mauger's view of Ivan's scope of employment: Mr. Mauger considered Ivan not only as an employee of Fitness Elite but also as a personal employee of his own. For instance, starting on approximately May 15, 2018, Ivan performed approximately 15 hours of labor over three days on Dan Mauger's property to prepare it for the installation of a pivot irrigation system. On a sperate occasion, Mr. Mauger requested Ivan to, and Ivan did, perform another three days of labor, beginning on or about September 24,

2019, installing an electric dog fence around the Maugers' property. This labor was outside the scope of the employment contract.

28. On the morning of April 26, 2020, Brooke Mauger informed Ivan that he was fired, texting him the following: "Thanks for such an enlightening demand letter. I sent it to our attorney[;] you will be receiving a termination letter, eviction notice and intent if [sic] lawsuit letter , [sic] for breach on contract. The letter was all we needed." A few hours later, Mr. Mauger confirmed Mrs. Mauger's termination and texted Ivan that he would be receiving "termination papers for breach of contract . . . ."

29. On April 27, 2020, Ivan asked Mr. Mauger if he should conduct practice with K.M., thus expressing his willingness to continue his duties under the current Contract in Idaho. Mr. Mauger replied to Ivan that he should not and that he was no longer employed.

### IV. CAUSES OF ACTION

#### FIRST CAUSE OF ACTION
#### BREACH OF CONTRACT

30. Plaintiff realleges and incorporate the foregoing paragraphs as if set forth fully herein.

31. Section 6(B)(a) of the Contract provides as follows: "If Coach is terminated without cause during the term of this Agreement, School will Pay Coach the remaining balance of the Contract. The Remaining balance calculation shall be prorated as of the date of termination." The severance payment of the remaining balance was to "be paid in a single lump amount with said payment to be made within 60 days of Coach ceasing to be an employee of School."

32. Ivan was terminated without cause on April 26, 2020.

33. The 60-day time frame for Defendants to have paid Ivan the required lump sum under the Contract passed on June 25, 2020.

34. Under the terms of the Contract, Defendants were required to pay a lump sum of $660,000 (the amount remaining due under the Contract) by June 25, 2020, subject to the specific mitigation clause found in Section 6(B).

35. To date, Defendants have not paid Plaintiff any portion of the lump sum severance pay.

36. Defendants failure to pay the requisite lump sum has amounted to a breach of the Contract.

37. Defendants further breached the Contract by violating Section 7, as they failed to grant Ivan the agreed upon deed of trust as collateral to ensure performance under the Contract.

38. As the direct and proximate result of Defendants' breaches, and pursuant to the Contract, Plaintiff is justly due $660,000, subject to mitigation thereunder. Plaintiff is further entitled to prejudgment interest on this amount from the earliest date of breach, pursuant to I.C. § 28-22-104, accruing at twelve percent (12%), along with post-judgment interest which will accrue at 5.25% per year. Defendants are further liable for all other damages caused by the breaches, including but not limited to moving expenses, loss of fringe benefits, costs, and attorney's fees in amounts to be proven at trial.

## SECOND CAUSE OF ACTION
## CLAIM FOR UNPAID WAGES UNDER THE IDAHO WAGE CLAIMS ACT

39. Plaintiff realleges and incorporates the foregoing paragraphs as if set forth fully herein.

40. Plaintiff is entitled to recover all unpaged wages, penalties, and damages under the Contract pursuant to Code §§ 45-601 *et seq.*, the Idaho Wage Claim Act.

41. The lump sum amount due to Plaintiff under the Contract constitute severance pay, a wage under Idaho law.

42.     Plaintiff is thus entitled to the damages alleged in paragraph 38 of this Complaint as unpaid wages or penalties, which must be trebled in accordance with Idaho Code § 45-615. Accordingly, as the direct and proximate result of Defendants' failure to pay wages, Plaintiff is due $1,980,000 ($660,000 x 3), and Plaintiff is further entitled to costs and attorney's fees pursuant to the same authority.

### THIRD CAUSE OF ACTION
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

43.     Plaintiff realleges and incorporate the foregoing paragraphs as if set forth fully herein.

44.     The Contract between Ivan and Fitness Elite included an implied covenant of good faith and fair dealing. Defendants were thus required to perform in good faith all obligations contained therein.

45.     The Defendants breach the covenant of good faith and fair dealing by agreeing to grant a deed of trust as collateral and then failing to provide the same, by refusing to engage in a meaningful discussion and/or renegotiations regarding Mr. Maurer's alteration of material terms of the Contract, by attempting to modify and amend the Contract without first reducing such an alteration to writing to have it reviewed and executed by the parties as required by Section 8(A) of the Contract, by failing to provide Ivan with the prior written approval to allow Ivan to take a position with UVU and by instead attempting to force Ivan through threat of termination to move to Utah and take the new coaching position which would have caused him to breach his additional duties set forth under the Contract.

46.     These breaches of the covenant of good faith and fair dealing violated and impaired Ivan's benefits and rights under the Contract as they ultimately led to his termination without cause, loss of wages, and loss of fringe benefits.

47. As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### PIERCING THE CORPORATE VEIL

48. Plaintiff realleges and incorporates the foregoing paragraphs as if set forth fully herein.

49. Fitness Elite Training Center, Inc. is an Idaho corporation formed by Dan Mauger on September 9, 2013. Its articles of incorporation authorized issuance of 10,000 shares. Dan Mauger is not only the incorporator, but also the registered agent, the president, the secretary, and the director.

50. On information and belief, it is reasonably believed that Fitness Elite is really just the "alter ego" of Dan and Brooke Mauger, thus amounting to a unity of interest and ownership such that the separate personalities of the corporation and individual no longer exist. This unity is illustrated by the following examples:

    a. Mr. Mauger has stated that he and the Fitness Elite are one and the same; indeed, Dan is the registered agent, incorporator, president, secretary, and director of Fitness Elite, thus illuminating his ultimate and full control over the corporation;

    b. Mrs. Mauger exercised control over and was involved in the operations of Fitness Elite, despite the lack of a formal position within the corporation, and as further evidenced by her asserting control over Ivan's actions;

    c. The real property, house, and wrestling facility located at 3050 Rex Leland Highway (3050 S 1950 E), Wendell, ID 83355, which is the original mailing address and incorporator address for Fitness Elite, are all owned by the Maugers, not Fitness Elite;

    d.  Both housing arrangements that were to be provided to Plaintiff by Fitness Elite under the contract were actually provided and owned by the Maugers;

    e.  Payment of half Ivan's disability and life insurance, which was to be provided by Fitness Elite under the contract, was actually provided by the Maugers;

    f.  The Maugers used other real property of their own, aside from the 3050 Rex Leland Highway facility, to run Fitness Elite;

    g.  The Maugers treated Ivan as a personal employee, having Ivan perform tasks outside the scope of his coaching duties;

    h.  Upon information and belief, the Maugers comingled funds in a manner that demonstrates that Fitness Elite and Maugers are really one in the same; for instance, the Maugers purchased the equipment, estimated at $500,000, for Fitness Elite with their own funds or funds from their other businesses; and,

    i.  Even though the Contract required Fitness Elite to "pledge certain real property" as a security interest, it was in fact the Maugers who promised and intended to provide a deed of trust for the gym to secure Fitness Elite's performance under the Contract, as Fitness Elite owned no real property.

51.  It is further believed that discovery in this matter will lead to additional evidence demonstrating that Fitness Elite is the alter ego of the Maugers, such as: the additional comingling of funds; the failure of Fitness Elite to abide by corporate formalities including failure to hold meetings, keep corporate records or minutes, and adhere to a formal corporate decision-making processes; the failure to operate the corporation separately; insolvency of the corporation at the time of the litigated transaction; and the failure to keep separate books.

52. Under the circumstances, it would be inequitable to allow Dan and Brooke Mauger to leave Fitness Elite undercapitalized and, in effect, "judgement proof" so as to avoid any future obligation or judgment owed or owing to the Plaintiff despite Dan and Brooke Mauger's promise to secure Fitness Elite's performance of the Contract, as well as their representations of having spent their own personal resources toward funding Fitness Elite and that Fitness Elite and the Maugers are one in the same. This inequity is especially evident where Ivan negotiated and bargained for collateral to be required in the Contract, in the form of a deed of trust, that would ensure Fitness Elite's payments for the Contract's entire term, and Defendants failed to perform this contractual obligation. To allow the Maugers to escape theirs and Fitness Elite's obligation by use of a corporate veil would leave Plaintiff without his bargained for salary for a five-year period, despite Ivan's best efforts to perform his duties under the Contract.

53. Because Fitness Elite is the alter ego of the Maugers and a seriously inequitable result would follow if the corporate veil is not pierced, the Maugers are liable for all of Fitness Elite's debts owed to Plaintiff under the Contract or otherwise.

### FIFTH CAUSE OF ACTION
### QUASI-ESTOPPEL

54. Plaintiff realleges and incorporate the foregoing paragraphs as if set forth fully herein.

55. The Defendants took the original position that they would secure Fitness Elite's performance by granting a deed of trust to Ivan. Defendant Mr. Mauger likewise took the original position that he and the Fitness Elite are one and the same. Any position taken by the Maugers suggesting they are not liable for the lump sum payment or any other obligations of Fitness Elite owed to Ivan's is inconsistent with those originally taken.

56. Defendants gained an advantage by these original positions (i.e., the employment services of Ivan) and induced Ivan to change his position (i.e., Ivan entered into the Contract based on those original positions).

57. It would now be unconscionable to permit the Maugers to avoid the liability of Fitness Elite or to avoid the debts owed to Plaintiff, as they already derived the benefit of Ivan's services based upon their original positions, as they promised but failed to secure Fitness Elite's performance.

58. Ivan is therefore entitled to all available and appropriate equitable relief under Idaho law, as well as those damages alleged in paragraph 38 of this Complaint.

### ATTORNEY'S FEES AND COSTS

Plaintiff has been required to retain the law firm of Powers Farley, PC, to represent him in this matter and is entitled to recover their attorney's fees and costs for said representation pursuant to Idaho Code §§ 12-120, 12-121, 45-615, Fed. R. Civ. P. 54(d), Dist. Idaho Loc. Civ. R. 54.1(b), and any other contractual provision, statute, rule or regulation providing for the recovery of attorney's fees and costs in this action. In the event this matter is uncontested and the Defendants allow the entry of default judgment against them, Plaintiff prays for reasonable attorney's fees in the amount of $7,500.00, or as otherwise determined as reasonable by the Court.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. For judgment against the Defendants for damages in an amount in excess of $75,000 to be proven with specificity at trial;

B. For trebled damages of all unpaid wages under Idaho Code § 45-615;

    C.    For judgment finding Defendants Dan and Brooke Mauger liable on each and all of Fitness Elite Training Center, Inc., debts, obligations, and judgments owed to or in favor of Plaintiff;

    D.    For reasonable attorney's fees and costs of suit pursuant to Idaho Code §§ 12-120, 12-121, 45-615, Fed. R. Civ. P. 54(d), Dist. Idaho Loc. Civ. R. 54.1(b), and any other contractual provision, statute, rule or regulation providing for the recovery of attorney's fees and costs in this action;

    E.    For pre- and post-judgment interest as allowed by law; and

    F.    For such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rules 38(a) and 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues raised in this action.

DATED this 30th day of July, 2020.

                              POWERS FARLEY, PC

                              By /s/ John M. Howell
                                  John M. Howell – Of the Firm
                                  Cody J. Witko – Of the Firm
                                  Attorneys for Plaintiff