UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IVAN DELCHEV IVANOV,<br><br>                    Plaintiff,<br><br>v.<br><br>FITNESS ELITE TRAINING CENTER, INC., an Idaho corporation, DAN MAUGER, and BROOKE MAUGER<br><br>                    Defendants. | Case No. 1:20-cv-00380-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Presently before the Court is a post-trial motion filed by Defendants after the jury returned its verdict and the Court entered judgment in this matter: Motion for Stay of Judgment Pending Appeal.  (Dkt. 123.)  Also pending are Plaintiff's Motion for Attorney Fees and Motion for Entry of Order to Show Cause on Contempt.  (Dkts. 124, 131.)   The motion is fully briefed and at issue.

The Court conducted a hearing on December 13, 2023, on the issues raised in Defendants' motion and Plaintiff's motion for entry of an order to show cause.  (Dkts. 123, 131.)[1]  For the reasons that follow, the Court will grant in part and deny in part

---

[1] All pending motions were taken under advisement by the Court at the conclusion of the hearing.

Defendants' Motion for Stay of Judgment Pending Appeal (Dkt. 123), and will grant in part and deny in part Plaintiff's Motion for Entry of Order to Show Cause on Contempt. (Dkt. 131.)

## DISCUSSION

### I.   **Stay of Monetary Judgment**

Defendants seek to stay the monetary judgment pending appeal and to modify the full supersedeas bond requirement under Rule 62(b).  (Dkt. 120; Dkt. 123.)

#### a.   **Legal Standard**

Federal Rule of Civil Procedure 62(b) provides that, "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security."[2]  Under Rule 62, a party is entitled to a stay of the judgment as a matter of right upon posting a bond or security.  *Am. Mfrs. Ins. Co. v. Am. Broadcasting-Paramount Theatres, Inc.*, 97 S. Ct. 1, 3 (1966).  The bond or security protects the prevailing party "from the risk of a later uncollectible judgment and compensates him for delay in the entry of the final judgment."  *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988); *see also United States v. Birdsong*, 2019 WL 1036277, at * 2 (D. Mont. Mar. 4, 2019) ("The purpose of Rule 62(b)'s bond requirement is to secure the prevailing party against the risk of being unable to collect the judgment.").  A district court has the discretion to modify or waive the bond

---

[2] Rule 62 was amended in 2018 to reorganize and revise the provisions for staying a judgment. Rule 62(b) "carries forward in modified form the supersedeas bond provisions of former Rule 62(d)." Fed. R. Civ. P. 62 advisory committee's note to 2018 amendments.  The "new rule's text makes explicit the opportunity to post security in a form other than a bond." *Id.*

MEMORANDUM DECISION AND ORDER – 2

requirement. *Int'l Telemeter v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985);

*Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988).

While a district court has the discretion to modify or waive the bond requirement,

"the burden is on the moving party to demonstrate the reasons for 'departing from the

usual requirement of a full security supersedeas bond.'" *Estate of Casillas v. City of*

*Fresno*, 2020 WL 3802749, at *1 (E.D. Cal. July 7, 2020) (quoting *Poplar Grove*

*Planting & Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir.

1979)); *see also Abbywho v. Interscope Records*, 2008 WL 11406049, at *4 (C.D. Cal.

Aug. 25, 2008) ("If the judgment debtor is unable to post a full supersedeas bond, it is the

judgment debtor's responsibility to convince the court that posting a full bond is

impracticable and to propose an alternative plan[.]" (quoting *LPP Mortg. Ltd. v. Gardner*,

2005 WL 2078339, at *1 (D. Or. Aug. 16, 2005))); *Biltmore Assocs., LLC v. Twin City*

*Fire Ins. Co.*, 2007 WL 2422053, at *1 (D. Ariz. Aug. 22, 2007) ("[T]he posting of a

bond is itself a privilege extended to the judgment debtor as a price of interdicting the

validity of an order to pay money. Accordingly, to depart from the usual requirement of

a full security supersedeas bond, the moving part must demonstrate reasons for such

departure." (cleaned up)). Because a stay operates for the appellant's benefit and

deprives the appellee of the immediate benefit of his judgment, "a full supersedeas bond

should be the requirement in normal circumstances." *Presidio Components, Inc. v. Am.*

*Tech. Ceramics Corp.*, 2019 WL 1542110, at *3 (S.D. Cal. Apr. 8, 2019) (quoting *Fed*

*Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 760 (D.C. Cir. 1980)).

Courts have utilized two different tests in considering unbonded stays of judgment pending appeal. The United States Supreme Court set forth the traditional standard governing motions to stay enforcement of federal court judgments in *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). *See also Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011). The *Dillon* test, in contrast, was first articulated by the Seventh Circuit in *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1988). "Although the Ninth Circuit has not articulated what factors should be considered when determining whether to waive the bond requirement, courts within the [Ninth] [C]ircuit have often considered those laid out in *Dillon v. City of Chicago*, 866 F.2d 902 (7th Cir. 1998)." *San Diego Comic Convention v. Dan Farr Productions*, 2018 WL 4852199, at *2 (S.D. Cal. Oct. 5, 2018) (internal quotation marks omitted) (collecting cases).

The five *Dillon* factors are:

(1) The complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court had in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the costs of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Id.* (citing *Dillon*, 866 F.2d at 904-07).

Some courts have recognized "that the *Hilton* test, while applicable to appeals involving injunctive relief, does not apply to motions to stay money judgments." *Pacific Rim Land Dev.*, No. 19-cv-00016, 2020 WL 4361150, at *2 (D. N. Mariana Islands June 4, 2020) (collecting cases). "The criteria in *Dillon*, 'in contrast to the traditional stay

MEMORANDUM DECISION AND ORDER – 4

factors, more directly address the primary purpose [of former Rule 62(d), now Rule 62(b)]: to ensure recovery for a party who ultimately prevails on appeal, and to protect the judgment debtor from the risk of losing the money if the decision is reversed." *Id.* (quoting *In re Nassau Cty.*, 783 F.3d 414, 418 (2d Cir. 2015)).  The Court agrees that the *Dillon* factors best address the concerns of staying the monetary judgment here, whereas the *Hilton* factors are more appropriately applied to stays of injunctive relief.[3]

### b. Analysis

To date, Defendants have not posted a bond or other security to stay the monetary judgment entered in the amount of $2,279,108.55 on October 6, 2023.  (Dkt. 120.) Rather, Defendants request a stay of execution on the monetary judgment pursuant to Rule 62(b) and propose a cash security deposit with the Court in the amount of $300,000.00 as an alternative to posting a bond.  (Dkt. 123-1 at 13-14.)  Under the *Dillon* test, however, Defendants have not met their burden in demonstrating the need to depart from the requirement of a full supersedeas security bond.[4]

In their reply, Defendants' counsel argues, without any evidentiary support whatsoever, that each of the *Dillon* factors has been satisfied:

---

[3] Insofar as the Court's directive in the judgment requiring Defendants to execute and record the deed of trust is considered injunctive relief, the Court will apply the *Hilton* four-factor test below.

[4] In arguing that a stay is proper and that posting cash security is sufficient to protect Plaintiff's interest, Defendants conflate the two stay standards set forth in both *Hilton* and *Dillon*.  Because the *Dillon* factors best address whether to stay execution on a monetary judgment, the Court considered whether Defendants satisfied the standard under the *Dillon* test.

As to each of the five factors: (1) the collection process will not be complex, as the Court is aware Defendants are very financially stable; (2) again, based on the proposals discussed herein and in our original moving papers, the process will not be time consuming at all and adequately protects Plaintiff's interests; (3) as the Court heard the evidence at trial, and considered the financials of Defendants, the Court's confidence should be high; (4) for the same reason as (3) there will be no issue with paying the Judgment if hypothetically Defendants were unsuccessful on appeal and the cost of a bond would be a waste of money, and Defendants have proposed an appropriate and reasonable option through the cash deposit; and (5) although his financial position is not precarious, the preference would be to post the proper security proposed as it avoids several of the issues associated with a bond while still serving the relevant factors/considerations.

(Dkt. 137 at 4.)[5]  A judgment debtor has the burden to "objectively demonstrate present financial ability to easily respond" to a monetary judgment and to present to the Court a "financially secure plan for maintaining same degree of solvency during period of appeal."  *See United States v. Moses*, Case No. 4:19-cv-00108-DCN, 2021 WL 1617376, at *3 (D. Idaho Apr. 23, 2021) (citing *Poplar Grove*, 600 F.2d at 1191).  Here, however, Defendants' counsel merely offers these sweeping conclusions about Defendants' financial solvency without offering any evidentiary support for their claims.[6]

---

[5] At the hearing, and contrary to the conclusory statement made in their reply brief, counsel for Defendants argue that the collections process would be complex, given Defendants are not prepared to "cut a check for that amount" due.  (Dkt. 150.)  Counsel attempted to clarify that the process of executing and recording the deed of trust would not be a complex process, although they have not complied with the Court's order directing that the same occur prior to now. However, as previously stated, the *Dillon* factors best address the concerns of staying a monetary judgment.  Thus, the Court will abstain from intermingling analysis of staying the directive to execute and record the deed of trust with analysis under the *Dillon* test.

[6] Notably, counsel for Defendants who presented argument during the hearing was not present for trial.

For example, despite Defendants' blasé contention that the Court is aware of Defendants' financial condition, the Court has no such knowledge beyond the limited amount of evidence presented at trial regarding Fitness Elite and Mauger Cattle Co. during the years of Plaintiff's employment by Fitness Elite from 2015 to 2020. Such broad and unsupported statements are far from sufficient to convince this Court that posting a full bond is impracticable.

Although Defendants propose an alternative plan of depositing cash security, the proposed cash amount of $300,000.00 falls woefully short of an amount that would indemnify Plaintiff against the risk of being unable to collect the judgment, particularly in light of the size of the judgment amount and the post-judgment interest that will continue to accrue. Thus, the Court finds that Defendants have not sufficiently demonstrated any basis for the Court to depart from the full supersedeas security bond requirement under the *Dillon* test.

For these reasons, the Court will deny Defendants' request to modify the bond requirement, but will grant a stay of execution on the monetary judgment, contingent upon Defendants' compliance with the full security supersedeas bond requirement. The Court will set the bond or cash security amount at $2,300,000.00. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987) (The district court has "inherent discretionary authority in setting supersedeas bonds.") The Court finds this amount is reasonable under the circumstances here, and sufficient to satisfy the purposes of Rule 62(b). *See Allied Premier Insur. v. United Financial Casualty Co.*, 2020 WL 1277760, at

**MEMORANDUM DECISION AND ORDER – 7**

*1 (C.D. Cal. Feb. 27, 2020) ("A district court has the discretion to set the bond requirement, with the amount of bond intended to secure the appellee[ ] from any loss as a result of the stay in the execution [on] the judgment."); *Vahara v. Valley Diagnostics Lab., Inc.*, 2019 WL 5960204, at *1 (E.D. Cal. Nov. 13, 2019) (holding that district courts have "inherent discretionary authority to set the amount of the bond and that the purpose of the bond is to "secure the appellee[ ] from any loss" resulting from the stay."

II.   **Stay of Execution and Recording of the Deed of Trust**

Defendants also seek to stay the Court's order on October 6, 2023, to "execute and record the deed of trust attached to the Head Coach Employment Agreement as Exhibit A and to provide proof of the same to the Court within 30 days."  (Dkt. 120; Dkt. 123.) Relatedly, Plaintiff requests that the Court order Defendants to show cause for failing to comply with this directive in the Judgment.  (Dkt. 131.)  As previously stated, the Court finds the *Hilton* factors appropriately apply to requested stays of injunctive relief.  Thus, the Court will consider whether Defendants have satisfied the traditional stay standard under the *Hilton* test in order to stay execution (i.e., signing) and recording of the deed of trust.

a.  **Legal Standard**

In deciding a motion to stay an order pending appeal, we consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4)

where the public interest lies." *Nkhen v. Holder*, 556 U.S. 418, 434 (2009); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The first two factors…are the most critical"; the last two are reached only "[o]nce an applicant satisfies the first two factors." *Nkhen*, 556 U.S. at 434-35.

Under the "sliding scale" approach adopted by the Ninth Circuit, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The same sliding scale approach applies to consideration of stays pending appeal. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam). "If anything, a flexible approach is even more appropriate in the stay context." *Id.*

### b. Analysis

#### i. Likelihood of Success on the Merits

Defendants contend that there are three separate issues that they are likely to succeed on with their appeal: (1) whether the damages owed to Plaintiff constitute wages under the IWCA; (2) whether the evidence at trial was sufficient to imply Wendell, Idaho as the Agreement's place of performance; and (3) whether directing Defendants to execute and record the deed of trust attached to the Agreement as Exhibit A divests

Brooke Mauger of a property interest.  In a nutshell, with their third and new issue, [7]

Defendants claim that Section 32-912 of the Idaho Code[8] is implicated, because

Defendant Brooke Mauger objects to conveyance of the property described in the deed of

trust that was pledged as security for the performance of Fitness Elite under the terms of

the Head Coach Employment Agreement.[9]  However, this excuse or explanation for

failing to abide by the Court's directive fails for several reasons.

First, Defendants' claim that I.C. § 32-912 voids Section 7 of the Head Coach

Employment Agreement was not asserted as an affirmative defense by Defendants  or

_____

[7] Because the first two arguments regarding damages under the IWCA and the place of performance are encompassed by the jury's verdict for Plaintiff on his claim for breach of contract and the corresponding award of monetary damages in his favor, the Court will not address the likelihood of success on these issues.  The Court fully addressed the same when deciding Defendants' motion for summary judgment (Dkt. 46), their motion for reconsideration (Dkt. 117), and rulings during trial.

[8] "Either the husband or the wife shall have the right to manage and control the community property, and either may bind the community property by contract, except that neither the husband nor wife may sell, convey or encumber the community real estate unless the other joins in executing the sale agreement, deed or other instrument of conveyance by which the real estate is sold, conveyed or encumbered, and any community obligation incurred by either the husband or the wife without the consent in writing of the other shall not obligate the separate property of the spouse who did not so consent; provided, however, that the husband or wife may by express power of attorney give to the other the complete power to sell, convey or encumber community property, either real or personal. All deeds, conveyances, bills of sale, or evidences of debt heretofore made in conformity herewith are hereby validated."  I.C. § 32-912.

[9] Section 7 of the Head Coach Employment Agreement is titled "Grant of Security Interest."  The Agreement provides:

"In order to secure the performance of School's [Fitness Elite's] Obligation created by this Agreement, School [Fitness Elite] agrees to pledge certain real property legally described on Exhibit A attached hereto and fully incorporated herein as collateral.  A mutually agreed upon deed of trust shall be granted by School [Fitness Elite] in favor of Coach [Plaintiff]."

(Dkt. 33, Ex. F; Dkt. 35-4; Dkt. 36-4, Ex. A.)

**MEMORANDUM DECISION AND ORDER – 10**

otherwise raised during pretrial or trial of any of the claims brought by Plaintiff in this lawsuit.  Further, any determination of whether and to what extent, if any, Brooke Mauger currently holds an interest in the property subject to the deed of trust is outside the scope of this lawsuit.  The Court is not disposing of the property as alleged, but is enforcing the promise made in the Head Coach Employment Agreement in November of 2015, consistent with the jury's advisory verdict and the Court's findings of fact on Plaintiff's claim for quasi-estoppel.[10]

Specifically, the Court found that Plaintiff, by a preponderance of the evidence, proved each element of his claim: Fitness Elite promised to execute and record a deed of trust pledging certain real estate as collateral under the Agreement; Plaintiff relied on said promise in executing the Agreement; Fitness Elite never executed the pledge; and Fitness Elite's failure to execute the pledge harmed him.  (Dkt. 118 at 10.)  Thus, the Court ruled in favor of Plaintiff and directed Defendants to execute and record the deed of trust as provided and written in Exhibit A attached to the Agreement.  (Dkt. 149.)  Through the Judgment, the Court is simply enforcing an eight-year overdue promise as the appropriate equitable remedy.

---

[10] Under Idaho law, quasi-estoppel prevents a party from asserting a right, to the detriment of another party, which is inconsistent with a position previously taken.  *Atwood v. Smith*, 138 P.3d 310, 314 (Idaho 2006) (quoting *C & G, Inc. v. Canyon Highway Dist. No. 4*, 75 P.3d 194, 198 (Idaho 2003)).  This doctrine applies when: (1) the offending party took a different position than his or her original position, and (2) either the offending party gained an advantage or caused a disadvantage to the other party; or the other party was induced to change positions; or it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in.  *Id.* at 145, 75 P.3d at 199 (citations omitted).

Second, any factual or legal argument regarding the validity of Section 7 of the

Agreement under Idaho law was not raised by Defendants before or during trial, despite

numerous opportunities for them to do so.[11]  Rather, Defendants first offhandedly

mentioned the potential applicability of I.C. § 32-912 in post-trial briefing filed in

opposition to Plaintiff's Motion for Entry of Judgment and Proposed Findings of Fact and

Conclusions of Law.  (Dkt. 105 at 9-10; Dkt. 108, ¶¶ 50-51.)  Thus, the Court finds

Defendants waived their argument by failing to raise I.C. § 32-912 or object before or

during trial.

Relatedly, Defendants insist that, before their reference to I.C. § 32-912 in post-

trial briefing and in their motion to stay, Brooke Mauger denied ever agreeing to sign the

deed of trust during her testimony at trial.  A review of Mrs. Mauger's trial testimony,

however, belies Defendants' argument.  Rather, she testified to not being directly

involved in either employment contract offered to Plaintiff—neither the initial draft nor

the final Head Coach Employment Agreement[12]—but indicated Dan Mauger had the final

_____

[11] At trial, Defendants had at least two opportunities to object.  First, the jury was instructed as to the quasi-estoppel claim.  (Dkt. 97 at No. 28.) ("To prevail on this claim, Mr. Ivanov must prove: 1) Fitness Elite made a promise to execute a deed of trust; 2) Mr. Ivanov relied on that promise; 3) Fitness Elite took a difference position that its original position; and 4) Either Fitness Elite gained an advantage or caused a detriment to Mr. Ivanov.")  Second, the jury received and completed the special verdict form. (Dkt. 93.)  Question 9 of the jury's special verdict form addressed the quasi-estoppel claim.  (Dkt. 93 at 3.)  ("Is Defendant Fitness Elite, by its promise to execute a deed of trust, now prevented from asserting the deed of trust does not exist?")  Defendants did not object to the wording of the special verdict form.

[12] The initial draft and the final revision of the Head Coach Employment Agreement, including Exhibit A with the legal description of the property subject to the deed of trust, was drafted by Fitness Elite's attorney.  (Dkt. 118, ¶ 4.)

**MEMORANDUM DECISION AND ORDER – 12**

decision-making authority as to the hiring and firing of employees of Fitness Elite, including Plaintiff. (Trial Testimony.) Further, at the time of signing the Agreement by Plaintiff and Mr. Mauger, Mrs. Mauger testified she was not speaking to Dan Mauger because she was "disappointed" that Plaintiff "backed out" of the initial offer that proposed a yearly compensation of $150,000.00 for Plaintiff. (Trial Testimony.) Thus, she was unaware that Plaintiff and Mr. Mauger signed the Agreement on November 9, 2015, but "was on board with [Plaintiff] coaching" once she was aware of his hiring. (Trial Testimony.) During her testimony, there was no mention of any objection by her to signing or pledging the deed of trust.[13] Thus, despite Defendants' insistence, the validity of Section 7 of the Agreement was never raised either before or during trial.

In sum, the Court rejects Defendants' last-ditch effort to renegotiate the Head Coach Employment Agreement by attempting to implicate I.C. § 32-912 after-the-fact. Thus, the Court finds that Defendants have not sufficiently met their burden with regard to the likelihood of success on the merits of this issue.

### ii. Likeliness of Irreparable Harm

Consistent with the explanation provided above, the Court also finds Defendants have not met their burden of establishing that Brooke Mauger will likely be irreparably

---

[13] In fact, Dan Mauger testified at trail that he was willing to sign Exhibit A that day, but did not do so. Further, the contractual provision promising that the deed of trust would be pledged as security for the performance of Fitness Elite was in both the initial draft and final version of the Head Coach Employment Agreement. (Dkt. 33, Ex. F; Dkt. 35-4; Dkt. 36-4, Ex. A. ; Dkt. 36-4, Ex. E.) There is no evidentiary support for Defendants' claim that Brooke Mauger objected to this provision at any point during the initial drafting or signing of the Agreement.

MEMORANDUM DECISION AND ORDER – 13

harmed in the absence of a stay of executing (i.e., signing) and recording of the deed of trust. More precisely, Defendants have not sufficiently demonstrated that any injury to Brooke Mauger is beyond mere speculation at this point. Defendants argue that, "if Plaintiff is successful in taking possession and potentially completing a sale of the property described in Exhibit A to the Head Coach Agreement [Dkt. 120], Defendants['] right to the property will be lost forever; which is a concern particularly acute to Defendant Brook Mauger, [whose] interest in the property was not conveyed in the Head Coach Agreement." (Dkt. 123 at 12.) Whether Plaintiff will need to foreclose on the deed of trust is indeterminable. At this stage of the proceedings, the interest of Brooke Mauger, if any, in the property is unchanged.[14]

Because Defendants' have not met their burden on the first two factors, the Court will not address the remaining two factors of the *Hilton* test. *See Nkhen*, 556 U.S. at 434-35.

> ### iii. Contempt

The Court will next address Plaintiff's Motion for Entry of Order to Show Cause on Contempt (Dkt. 131) for Defendants' failure to comply with the Court's directive to execute and record the deed of trust within the allotted time. The Court has considered

---

[14] Further, as noted by Plaintiff, the exact same property described in the deed of trust was listed for sale both before and after the Court's entry of Judgment directing Defendants to execute and record the deed of trust within thirty days and to provide proof of the same. As demonstrated at argument, there is no dispute that the property subject to the deed of trust was listed for sale. However, the parties disagree as to whether the listing is currently active.

**MEMORANDUM DECISION AND ORDER – 14**

all materials filed in support and in opposition to Plaintiff's motion, including
Defendants' explanation during the hearing on December 13, 2023, for their non-
compliance with the Court's order.

District courts have jurisdiction to enforce their orders, even though a notice of
appeal has been filed. *E.g., United States v. Carter*, 17 F.3d 396 (9th Cir. 1994) ("Absent
a stay, district courts have the authority to enforce their orders including holding parties
in civil contempt while an appeal of the underlying enforcement order is pending."). 
Otherwise, a party could entirely undermine judicial proceedings by defying a court's
order during the pendency of an appeal without immediate consequence. The federal
judiciary is not so helpless. *See Land v. Dollar*, 190 F.2d 366, 379 (D.C. Cir. 1951) ("An
order issued by a court having jurisdiction of the persons and subject matter must be
obeyed, even though the defendants may sincerely believe that the order is ineffective
and will finally be vacated, even though the Act upon which the order is based is void,
even though the order is actually set aside on appeal, even though the basic action
becomes moot ... because of the necessities of orderly process under our constitutional
system of government.").

"[C]ourts have inherent power to enforce compliance with their lawful orders
through civil contempt." *Sandpoint Gas N Go & Lube Center, Inc.*, No. 2:14-CV-00357-
BLW, 2018 WL 6310268, at *1 (D. Idaho Dec. 3, 2018) (quoting *Shillitani v. United
States*, 384 U.S. 364, 370 (1966)). Rule 70 also provides that "[t]he court may also hold
the disobedient party in contempt." Fed. R. Civ. P. 70(e). The contempt sanction has

**MEMORANDUM DECISION AND ORDER – 15**

been called "[t]he most prominent" of the courts inherent powers to protect "the due and orderly administration of justice" and to maintain "the authority and dignity of the court." *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980) (cleaned up).  Among its many tools, a court has the authority to dismiss cases, assess attorney fees and costs, and impose fines on parties and their attorneys.  *Id.* at 765–66.

"A court's contempt powers are broadly divided into two categories: civil contempt and criminal contempt."  *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 628 (9th Cir. 2016).  Within the realm of civil contempt, there are two types: coercive and compensatory.  *Id.* at 629.  Civil coercive contempt proceedings are used to bring the party into compliance with a court's order, whereas civil compensatory contempt is remedial in nature and is used to compensate an aggrieved party for its resulting losses. *Id*.

"A court has wide latitude when it determines whether there has been a contemptuous defiance of its order."  *McCabe v. Arave*, 827 F.2d 634, 640 (9th Cir. 1987); *accord Neebars, Inc. v. Long Bar Grinding, Inc.*, 438 F.2d 47, 48 (9th Cir. 1971) (per curiam).  "While a court has discretion to excuse minor, technical, or good faith violations of an injunction, it likewise has discretion to punish substantial violations" when they are proven by clear and convincing evidence.  *Irwin v. Mascott*, 370 F.3d 924, 932 (9th Cir. 2004) (cleaned up).

As explained above, the Court finds that Defendants' excuse or explanation for not complying with its directive to execute and record the deed of trust within thirty (30)

days of the judgment is wholly insufficient.  Thus, the Court will reaffirm its order, and

will not stay the same.  Failure to comply within fifteen (15) days will result in the

Court's consideration of contempt sanctions.  To this extent, Plaintiff's motion for

contempt is denied, without prejudice.

## ORDER

THEREFORE IT IS HEREBY ORDERED as follows:

1. Defendants' Motion for Stay of Judgment Pending Appeal (Dkt. 123) is

**GRANTED IN PART AND DENIED IN PART**.

2. The motion is **GRANTED** as to the request for stay of execution on the monetary

judgment, contingent on Defendants posting a bond (or depositing cash security) in the

full amount of $2,300,000.00 on or before **January 3, 2024**.  Accordingly, execution on

the Judgment will be **STAYED** pursuant to Rule 62(b) pending resolution of any appeal,

unless otherwise ordered by the Court.  If Defendants fail to post the bond (or deposit

cash security) in the full amount of $2,300,000.00 by **January 3, 2024**, the stay will be

lifted automatically.

3. The motion is **DENIED** as to Defendants' request to modify the bond requirement

and to stay execution and recording of the deed of trust.  Defendants Dan Mauger and

Brooke Mauger must execute and record the deed of trust (Dkt. 149), and provide proof

of the same to the Court, no later than **January 3, 2024**.

**MEMORANDUM DECISION AND ORDER – 17**

4.  Plaintiff's Motion for Entry of Order to Show Cause on Contempt (Dkt. 131) is

**GRANTED IN PART AND DENIED IN PART** as explained above.

DATED: December 19, 2023

Honorable Candy W. Dale
United States Magistrate Judge